v. Owen, 5080656. Mr. Goldenberg, you're going to argue first. I am proceeding. Good morning, Judge Rex, Judge Bowman. I'm here on behalf of the appellant, Dan Arnold. Jack Kerry handled his case in the circuit court. Jack Kerry recently had bowel replacement surgery on his heart and is unable to attend. In the baseball parliament, it's been put in as a pinch hitter. Mr. Reed, Mr. Sprague, I'm here with Justice Brerich, who's also here for the appellant, Dan Arnold. When considering the totality of the circumstances in this case, the order of the circuit court and Judge Cook should be reversed as an abuse of discretion because it is clear that Arnold had a meritorious defense to the claim to enforce his settlement, and he moved diligently to vacate the default judgment when reviewed in connection with all of the circumstances here, and substantial justice will mandate that the appellate court reverse the order. A little background on this case. The first case started in 1999. It was a case filed by Dan Arnold under the Business Oppression Statute. He claimed wrongful termination, failure to pay dividends, exclusion from the process, and it involves two corporations, Geisler Roofing and D&D. D&D was a property corporation that actually owned property and leased it to Geisler Roofing. This case went on from 1999 through 2007. Well, actually, it was litigated for eight years. 1999 is when they had the dismissal with prejudice. The dismissal with prejudice was in 2007. It was? The dismissal was with prejudice. Oh, that's correct. That's correct. It was April 2, 2007 in the 1999 case. And what's important about the dismissal with prejudice is it was after there was this alleged settlement in the 1999 case. Sometime in December of the prior year, the Geisler Roofing had filed a motion to enforce that settlement in the 1999 case in January of 2007, and both of those were pending at the time that Dan Arnold had it. And the motion to enforce the settlement in January of 2000. By the way, a motion to either enforce the settlement or dismiss the case with prejudice. Then Mr. Arnold went in and he dismissed the case with prejudice in a very detailed motion to dismiss with prejudice. We have it. There is no settlement. I understand. They've offered a settlement. I've accepted it. There will be no settlement, I understand, by dismissing it with prejudice. I'm giving up all of my claims in this case. That motion to dismiss was then picked up by Geisler Roofing's counsel, Mr. Reed, and taken over and presented to Judge Rice, who signed the order at that point in time. Dismissing the case, which we think brings under race to the kind of finality of this whole issue, because it's a final judgment with the same parties and the same belief that we're talking about here. The 2007 case is a case that was filed during the pendency of the motion to vacate eventually. What happened after the case was dismissed with prejudice, the 1999 case was dismissed with prejudice, both parties ending the litigation, Mr. Arnold found another buyer for his shares of stock that were issued in the case. When he found another buyer for his stock, that's when Geisler Roofing said, oh my goodness, we made a tactical mistake, we made a strategic decision that was wrong. We want to go back in time and vacate this dismissal with prejudice, which was 60 days old at that time. We want to do over. And of course, that's not why you vacate a judgment. They also filed a 2007 action that sought, which was a contract action, reported to be a contract action seeking specific performance of this alleged settlement agreement with the 1999 case. But they didn't tell Jack Kerry about this lawsuit, they didn't tell Dan Arnold about this lawsuit. And we come along a year later in March of 2008 when they allegedly served Dan Arnold at his home in Florida. And on the 2007 case, while the motion to vacate the 1999 case is still pending, Mr. Arnold represented by counsel in that case. They allegedly served Dan Arnold in Florida. They go in 31 days later in April, actually April 2, 2008, which I think is actually one year to the day after the motion to dismiss with prejudice in the 2007 case. And they go into Judge Gleeson and they get a default judgment entered against Mr. Arnold based on the fact of the alleged service and the affidavit from the service processor. They don't file it to tell Judge Gleeson, by the way. They don't file it to tell Judge Gleeson. We have another case pending in this courthouse with another judge. It's reasonable to infer, because they point out in the brief that there's no record of this. But I think it's reasonable to infer because they know it's disputed. But they didn't tell Judge Gleeson. There's another case pending seeking the same relief we're seeking in this case. The Dan Arnold was represented by counsel in that case. And we've been litigating that case for eight years. That case involved a motion to enforce the same settlement agreement that's the purpose of our contract action. And that case was dismissed with prejudice a year earlier. So they don't tell that to Judge Gleeson on the day they get the ex parte default judgment order. Interestingly, they got a hearing set the next day on their motion to vacate the dismissal with prejudice in the 1999 case. I think by this point they realized their motion to vacate the dismissal with prejudice in the 1999 case was going nowhere. There was no basis for it. They just wanted to revisit their strategical and tactical decision. They don't bother to tell Judge Gleeson, hey, by the way, we're going to be in front of another judge the next day on the same case. So they go in and the motion to vacate is set the day after they get the default judgment in front of another judge in the same courthouse. They file the 237 notice for Mr. Arnold to appear at the period of the motion to vacate the 1999 case. And they go into the court the next day. They don't bother to tell anybody, not the judge, not Jack Kelly, not Dan Arnold. By the way, we got a case filed against you seeking the same relief in the 2007 case you filed. By the way, which you don't know about, we got a default judgment against you yesterday. What they do is they go into this hearing and they say we need to continue it, even though they've asked Dan Arnold to come forward. We believe, gentlemen, what they're doing is this is a ruse. This is an orchestration to get beyond 30 days beyond the default judgment. Because we know that they go in 31 or 32 days later, or 40 days later, the case is set again in front of Judge Rice. And they go into Judge Rice at that point in time and they say in that hearing, we really don't need to pursue our motion to vacate the dismissal with prejudice in the 1999 case because we got a default judgment 40 days ago against Mr. Arnold in our contract case for specific performance. It's indisputable that Jack Kelly was on the attorney record for Dan Arnold in the 1990 case, unaware of the 2007 case. What were the grounds to vacate the dismissal? The dismissal with prejudice? Right. Well, reading their motion to vacate the dismissal with prejudice, they said, we didn't know that he was going to sell the stock to somebody else. And we thought that the stock might be restricted if he sold it. But it had nothing to do with the actual obtaining of the dismissal with prejudice Judge Fulmer in the 1999 cases. Oh, my goodness. We decided to dismiss this case with prejudice and we pardoned, forgotten, gave up our motion to foresell the motion pending in the 1999 case. They had thought, well, he was going to sell the case. So now they've alleged in the motion to vacate the 1999 dismissal with prejudice. We didn't know he was going to sell the case to sell the stock. He's now sold the stock. We don't like that. We thought we had a restriction on the stock. We don't like it. And now we want to go back and we want to redo our decision to agree to this dismissal with prejudice in the 1999 case and have it revisit our tactical decision. And that's, there was no grant as far, in our opinion, which is why we think they tried this recent orchestration with the 2007 case. Under either scenario, barred by the concept of res judicata, finality of the 1999 case dismissed with prejudice is finality. We have the same issues, motion to enforce an alleged settlement. We have absolutely identical parties and you have absolutely the same relief being sought. So we think that that is Arnold's reasonable diligence. Arnold claims he wasn't served. There was a hearing in front of Judge Crook, which we believe concentrated too much on the issue of service. Arnold to this day denies that he was served. But even presuming Arnold was served, this is a layman that's in the middle of litigation that's been ongoing for eight years and has always been represented by counsel. He's got a case that's pending. There's activity going. There's a hearing coming up within a month. He's going to be deposed within a month. Even presuming he got served, he gets papers, same parties, same cause of action. He's got an attorney. It's reasonable for him to – it would have been reasonable for him to presume this was going to be handled by counsel. They don't bother – when we get to the default judgment, they don't bother to tell Mr. Arnold. Even though they see him the day after in court, they don't bother to tell Mr. Arnold. And it's indisputable. They never served Jack Perry. They never told Jack Perry about the 2007 case. It's indisputable. But once Arnold finds out about the next – on that day in May 13th, I think, of 2008, it may be off the date. Once he finds out that they've got a default judgment, Jack Perry then goes and gets the complaint for the first time, gets a copy of the order of default in the 2007 case, and then within 30 days files a motion under 1401 to vacate the default judgment that was obtained in front of Judge Gleason in the 2007 case. So we think it's – and the whole time that they've got this default judgment in pocket, they're continuing to make it look like we're going to go forward with our motion to vacate the dismissal of prejudice in the 2007 case, not telling anybody, not letting it off for this 30, 40-day period. But, hey, we've got a default judgment that we think is dispositive of our motion to vacate the 1999 case because we want to get you into section – we want to get you beyond the 30 days for you to go in and get the default judgment set aside. So when you look at this totality of events, and then they don't tell Judge Gleason, it's reasonable to infer that they bring up in the brief, well, there's no record of what happened in the motion for ex parte default, but it's reasonable to infer that Judge Gleason wasn't told all of the facts that he should have been told. And we cite in our brief Rule 3.3d of the Illinois Rules of Professional Conduct, which provides, in an ex parte proceeding, a lawyer should inform the tribunal of all material facts known to the lawyer, which will enable the tribunal to make an informed decision whether or not the facts are inverse. We believe it's reasonable that Judge Gleason, had he been told all of these facts, would have said, wait a minute, we're not going to give you this default judgment against Dan Arnold, who's represented by Jack Kerry on a case seeking the same relief with the same parties, and you're going to be in court with him the next day? We're not going to – and what happens is when Judge Gleason first sees the motion to vacate the default judgment, he immediately vacates it. He later vacates his vacation of the default judgment because he decides on a procedural basis that he maybe ought to have a hearing before, because now everybody knows that maybe he should have a hearing on this case, but that doesn't mean that he wouldn't have set it aside anyway, because he did not know all the facts. They didn't tell Judge Rice the day after that they had obtained the default judgment before. So we think it's incumbent. So when you look at this – when you look at the facts of the due diligence, and the conduct of Gleason and his counsel in engaging in this scheme to get this default judgment and not advise Mr. Arnold of it, we think that it is – and then when they file the motion to vacate within 30 days of the time they first learned of the default, clearly within 30 days of the first time Jack Kerry even knows about this, that we think that that indicates reasonable diligence on their part. I want to talk a little bit – and there's a couple other – there's some numerous cases in our brief that cite and talk about conduct of the parties and substantial justice and totality of the circumstances, and don't look at these issues in a vacuum. They're going to talk about – and the Haley case is a great case. It says, in determining the reasonableness of the excuses offered by the petition, all of the circumstances attendant upon entry of a judgment must be considered, including the conduct of the litigants and their attorneys. That's the Haley case. They say, well, zealous representation of our client prohibited us from telling you that we got this default judgment. We don't think that zealous representation of a client must be within the code of professional conduct and doesn't justify violation of the rules of conduct. And so we think that's a – Rule 8.8, 8.4, 8.4 and 8.5 prohibit an attorney from engaging in conduct about the deceit or misrepresentation or conduct that's prejudicial to the administration of justice. So not only are they not telling Jack Kerry and Dan Armour what they're doing, they're not telling the two judges in St. Clair County that are hearing this case. So I think that it's clear that Mr. Arnold and counsel Jack Kerry satisfied the first – 214.01 has two – they're going to talk a little – they're going to talk a lot about service when they – Service is presumed, isn't it? Service is presumed by one prong of – even though we don't concede service, Judge Wexton, that's a good point. But 214.01 talks about reasonable diligence and a meritorious defense. Presumed service. You're right. So it's clear that – it's clear, in my opinion, that reasonable diligence was exercised here. The default – the motion to vacate the default judgment's entered within 30 days of knowledge. It's entered within 75 days of the date it was obtained. There's cases that go out for five months where a motion to vacate the default judgment was proper. The statute contemplates maybe as much as two years. So let me talk a little bit about the meritorious defense because the meritorious defense, I think, is clear. And I think that's an issue that this Court can look at on a de novo basis if you want to look at the race to the cut issue because that's a question of law because the facts are not in dispute. The same parties are involved. You've got Dan Orr, you've got Mr. Olin, you've got Geisel Riffin, you've got D&D. The actions are the same. Motion to enforce the settlement had been filed in the 1999 case, filed in January of 2007. The contract action for specific performance is the force – is the state specifically performing this alleged settlement agreement in the 1999 case. The dismiss – remember that the motion to enforce the settlement in the 1999 case sought a motion to enforce the settlement are dismissed with prejudice. Dan Orr filed a motion to dismiss with prejudice at the end of March 2007, and it's very detailed in his motion. It talks about, I know they're offering me a settlement, I don't have a settlement, I know I'm marking away for settlement, I know I'll give you all my causes of action permanently. That – and that order's been – that motion has been picked up by Mr. Reed, Jack Kerry's office, taken over and presented to the judge who signs the order. So you have the same parties, the same relief being sought, the same facts, final judgment, that's race judicata on the issue of the 1999 – and all of these cases. So I think that – I think that that clearly – that not only satisfies the meritorious defense element, I think it's dispositive of the meritorious defense element, not to mention the question of whether or not there was or was not a settlement of the 1999 case. And that was – Judge Cook had a long hearing of this motion, hearing as to whether or not there was a 1999 settlement or not. Of course, that was – that wasn't a dispositive hearing on this – on the issue of a 1999 settlement. And we contend there was no settlement of the 1999 case. But having said that, arguably, if there was a settlement, or if they had merit for their motion to force settlement, they gave that up. Because when the case was dismissed with prejudice, Dan Arnold gave up his right to seek compensation or relief for his claim for wrongful termination, for oppression as a shareholder, for failure to pay dividends. He gave up all of those rights. They thought, okay, this is great. We don't have to pay him any money. He's going to dismiss this case with prejudice. And they agreed and consented. We know they consented because they picked up the motion for dismissal with prejudice. And they took it to Judge Rice, and they presented it to him to enter that in the 1999 case. That's the issue. And as Judge Bomer, as she brought out, what was the basis for them to move to vacate the dismissal with prejudice? Well, there wasn't. Well, we've got some facts out 60 days later that he found a buyer for his stock and thought his stock might have a restriction. That's nothing new in that. And that's certainly under no circumstances a grounds for a motion to vacate the dismissal with prejudice in the 1999 case, which, by the way, at the start of the hearing, was finally set for hearing in May of 2008. They walk in and tell Judge Rice this. And we don't need to pursue our motion to vacate the dismissal with prejudice anymore. That means we don't have to move on our motion to vacate the dismissal with prejudice anymore because we got into full judgment on another action 40 days ago, and we think that's dispositive of this case. And that's the first time that Jack Kerrey and Dan Arnold, who are the default judges, have moved within 30 days to vacate it. And we think substantial justice and equity and fairness require that this case be sent back and, if not reversed outright in judgment in or from, reversed so they can have a trial on the merits. That's what justice prefers. Of course, the default prefers a ruling on the merits of the case. Thank you. Thank you, Mr. Goldberg. You have an opportunity for rebuttal. Mr. Reed. Thank you, Your Honor. Good morning, Your Honor. Counsel. The totality of the circumstances in this case is that the case was settled by Mr. Arnold's prior counsel, and the entire litigation that proceeded after that was Mr. Arnold's conduct in breach of that settlement agreement. And, Justice Spomer, you asked about the motion. What was the basis of the Geisler motion to set aside the dismissal of prejudice? And that was in a pleading that was filed on May 2nd of 2008, alleging new facts and alleging facts that were not known to Geisler at the time, including but not limited to an allegation by Geisler that Arnold breached his settlement agreement and there was a conspiracy to breach it in order to avoid paying certain liens, which Mr. Arnold owed to his ex-wife and owed to the court. These were court orders that he actually signed himself, and that's the reason that the motion to set aside the dismissal, our motion to set aside the dismissal, was filed. What the court did here, what Judge Cook did here, was look at the totality. Your client did consent to the dismissal with prejudice. Right. Right. And, point of fact, we still believed that there was a settlement, and we still believed that Mr. Arnold would have to come to us to settle the case, and we had already agreed on the price. But why would you agree to dismiss with prejudice if the settlement hasn't come to fruition? Because we believed that Mr. Arnold was doing this in order to avoid paying amounts, which had been liens, which had been filed on his counsel. At that point, he had already fired his original counsel and he had new counsel. And if there's no lawsuit and if you pay the amount outside of the lawsuit, then he doesn't have to honor the liens and they'll have to pursue their own remedy to collect the money from him, independent of the lawsuit itself. What Judge Cook did in this case is look at the totality of all the circumstances. We had a motion to set aside at the hearing. They had a motion to set aside, both under 1401. It's the position of Geisler in this case that Dan Arnold did not exercise due diligence in filing his 1401 motion. In that, to get relief under that statute, not only do you have to file a motion in a timely manner, you also have to have a defense, which they claim they have, but you also have to exercise due diligence in the first instance. Counsel talked about how we didn't advise counsel of various things and various pleadings of wrong, pleadings that were filed. Mr. Arnold was served. In fact, Geisler spent considerable money in going to Florida to take a video evidence deposition of the process server in order to prove that Mr. Arnold had been served. And these issues were brought up after the default, obviously, where he claimed in court, he claimed in affidavits that he never was served. And we spent considerable money in order to prove that Mr. Arnold was served. And because he didn't exercise due diligence on his own behalf, his negligence cannot be bootstrapped at a later time to say, well, now I want relief. Even though I met with my lawyer, I was in court, I had a lawyer, and I never told him I was served. And that's the basis of, one of the basis that the court used in order to deny the 1401 petition. The other basis the court used to deny the 1401 petition is that the court felt very strongly that there really was a settlement between parties. There really was a settlement between the parties, and the record supplemented by emails that were forwarded between counsel, Mr. Arnold's original counsel, referred to the amounts. The settlement letter, which Mr. Merithian recites that there's been a global settlement. He may not have used that word, but I think he did. All issues between the parties on November 22nd at 4 o'clock was supported by phone records in which Mr. Arnold was speaking with his attorney. He had numerous phone conferences with his attorney that day. So this whole case started when Mr. Arnold settled that case and then decided later he didn't want to do it when he found out he had to pay his ex-wife. I mean, those are the facts. And the reason that the court found that there was a settlement was not only the emails, but it was all of the other conduct by the parties. Mr. Merithian had express authority, and the only evidence that he didn't have any express authority was by Mr. Arnold when he testified in court. Well, there were still things outstanding. One of the emails in the case is an email to Dan Arnold from George Merithian where he says, In close, please find the letter that I sent to counsel from Geisler, and it's word for word. He sent it in an email with an attachment in terms of what the settlement was. Judge Cook had all of those documents before him when he entered his opinion. There was no violation of professional conduct. What counsel here has done is stated that, first of all, they assume Judge Gleeson was not told or told anything. Number two, that Judge Gleeson wouldn't have signed the order had he been told. And none of those are in the record, and certainly Judge Gleeson was shown proof of service. And there's no record of anybody telling Judge Gleeson one thing or not. And I don't think that's a proper basis for asking this court to set aside any order for Judge Cook. There was jurisdiction established over Mr. Arnold, and that was clearly, I know Judge Weston stated, that service is presumed, but we spent considerable time establishing service over Dan Arnold. In this case, the service was obtained. In fact, we took two depositions. One was evidence, and one was a video evidence when the lady who served him couldn't appear in court. And I think what Judge Cook did in this case is enforce the judgment, enforce the contract, which was entered in between the parties that settled this case. Well, service is presumed. You said you went ahead and you had a deposition of Arnold. Was that after alleged valid service? The deposition of Arnold? Right. The issue of his service never came up in a deposition. It came up in a hearing before Judge Cook where he said I wasn't served. Didn't he participate in a deposition? He had an attorney there, yes. And she was cross-examined, yes. And I think once Dan Arnold brought up the issue that he wasn't served, I think it was incumbent upon Geisler to go forward with evidence to show that he was served, even though it may have been presumed. You know, the case law says the affidavit of the process served. You have to rebut it by clearing convincing evidence and so on. But we went ahead and did that. Mr. Arnold, by the way, even though he said that he wasn't served, he never did say where he was. And not surprisingly, the residence where the process servers went to serve him was his residence. He stated that in open court, and it was in the affidavit. So he never said I was fishing or I was playing golf or I was out of town or I was at a ball game or any of those things. He just made a flat denial that he wasn't served. And he had plenty of opportunities to advise his counsel, to advise anybody that he had been served. He'd certainly been – there was even testimony from the process server that other process servers were trying to serve him in other cases. So he was certainly an individual who understood what the service process was. Who was the judge that dismissed the case with prejudice in 07, 99? Rice, Steve Rice. And then who was the next judge that it went to? Rice had the case. Okay. He kept the case. How did Gleeson get it? Because it was a miscellaneous remedy case that was filed. So this started as a chancery and that was Judge Rice. Correct. Then it became an MR case. A different judge was assigned. Okay. And then Judge Cook ended up with it. Judge Cook ended up with it because of changes that were taken from Judge Rice by a plaintiff, I believe. I'm not positive, but I believe that's who it was. By the way, one of the mentions in the brief filed by the plaintiff in this case is that the judge's ruling causes Dan Arnold to forfeit his interest in the company. And what the ruling does is force him to comply with what he agreed to do in November of 2006 when the settlement was effected. And for all the reasons that we stated in our brief and argument, we would ask support to affirm the ruling of Judge Cook. Thank you for your time. Thank you, Mr. Reed. Mr. Goldenberg, do you have a rebuttal, sir? I'm going to take two minutes and then Justice Gerg is going to talk three minutes. Okay. Thank you, Justice Gerg. I want to talk about the issue of professional conduct and the duty to talk about it. Judge Rice, I know you asked a question about the deposition that Dan Arnold was present in. That's the deposition of the process server that was taken with regard to the motion to vacate the ex parte entry of the default judgment. His deposition was taken in the 1999 case when they had the default judgment, but prior to them telling him at that deposition in May of 2008, we've got a default judgment against you. They wanted to concentrate on service because they don't want to talk about due diligence or they don't want to talk about their conduct. It's glaring in their omissions. Well, you can't say what we didn't tell Judge Gleason, but they're not going to stand up and tell you we fully informed Judge Gleason of everything that was done. I don't want to read it in, but I want you to look, if you would, please, at the motion to dismiss filed by Mr. Arnold in the 1999 case because it's specific. He acknowledges defendants have made an offer in compromise in full settlement of the above-entitled cause. He acknowledges he rejects the defendants' offer in compromise in full settlement. He acknowledges the defendants have filed a motion in forced settlement on the alternative to dismiss the cause of action. And as Mr. Reed said, they had this motion and they consented to its entry. We'd like the court to look at all of the cases we cited, in particular Haley and Manicab and the Eastman-Kodak, which really stands for the five-year sentence. But the one case that's the Supreme Court case says, although the Supreme Court noted that there was no independent duty to inform the defendant of the default judgment, fair appealing required plaintiff's counsel to inform the defendant of the defaults when the question arose. Instead of pursuing the course calculated to keep the defendant in ignorance until the time, he could make a direct attack on the judgment that expired and substantial justice required. Thank you, Mr. Feldberg. Judge Rarick, you wish to argue? You may be seated, too. Yes, thank you. May it please the court, counsel. Your Honor, opposing counsel here today, and in his brief, does not dispute his failure to fully inform either judge or police department of the price. His brief only contains, if you'll notice, two short paragraphs saying, since there's no record of what the plaintiff was told, there can be no violation of the rule. Notably, also, your brief does not even address your failure to mention the Supreme Court case, which Mr. Feldberg just mentioned, and the element of case holding, that even if there was no independent duty to inform the default judgment, fair appealing required notice instead of keeping and pursuing a course of conduct calculated to keep the defendant in ignorance until the time that he could make a direct attack upon the judgment that expired. That is clear, I think, what happened here today in this case. There's also no mention in the brief, in their brief, about the man in cap case that has been referred to here. In which the court said the conduct of the opposing counsel clearly warranted a petition to take a case upon a failure to disclose the existence of the man in cap. That's, again, stated by our Supreme Court in the Effman v. Evans in cap, and Mr. Feldberg has also referred to the Alley case, which, I think, has the same holdings. Our rules of professional conduct are clear in their requirement that counsel be circumspect in ex parte proceedings. Rule 3.3e provides in an ex parte proceeding, a lawyer shall inform the tribunal of all material facts which will enable the tribunal to make an informed decision. That didn't happen. Rule 8.4a, 4, and 8.5 prohibit attorney conduct which is prejudicial to the administration of justice. Unfortunately, that did happen here. When this court makes its determination in this case, all of the circumstances surrounding the death, must be considered, including the conduct of the litigants and their attorneys. And I submit to you that justice and good conscience are the university of this case.